UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ALC Financial Corporation,
a Minnesota corporation,

Plaintiff,

v.

Atlas Recreational Holdings, Inc.,
a Florida corporation, k/n/a
Recreational Holdings, Inc.,

Defendant.

Civil No. 00-938 JMR/FLN

**ORDER**

---

James E. LaFave for Plaintiff.
George R. Serdar for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on November 16, 2001, on Plaintiff's and Defendant's Cross Motions for Summary Judgment [Docket ## 22, 26]. Per the parties' Agreement, the matter was heard by the undersigned under 28 U.S.C. § 636 and Local Rule 72.1(g). For the reasons stated below, Defendant's Motion for Summary Judgment will be granted.

## I. FACTUAL BACKGROUND

The majority of facts giving rise to this case are undisputed: Through a series of financial middlemen, Defendant, Atlas Recreational Holding Company, Inc. ("Atlas") negotiated a loan from Plaintiff, ALC Financial Corporation ("ALC") to finance its purchase of Holiday RV. The essence of this unusual transaction consisted of ALC lending Atlas eight million dollars, only if Atlas posted cash collateral of eight million dollars to secure the loan. The mechanics of the transaction contemplated by the parties were that Atlas would post eight million dollars in collateral which ALC

JAN 18 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

would repay with 5.75% interest. ALC would lend eight million dollars to Atlas at 8.75% interest.

The parties each signed promissory notes promising to pay the other's eight million dollars with interest. Atlas never posted its eight million dollars in collateral and ALC never disbursed the proceeds of the loan to Atlas.[1] In the end Atlas financed the purchase of Holiday RV from other sources.

## II. CONCLUSIONS OF LAW

### A. STANDARD OF REVIEW

A court will grant summary judgment if the record presents no genuine issues of material fact when the facts are viewed in the light most favorable to the non-moving party. See Rabushka, ex rel. United States v. Crane Co., 122 F.3d 559 (8th Cir. 1997). The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Federal Rule of Civil Procedure 56(c) provides, in relevant part, that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A party opposing a motion for

---

[1]For reasons not readily apparent from the record, the parties divided their eight million dollars into two separate transactions; the first transaction for two million dollars, and the second for six million dollars. The documentation pertaining to each of the two transactions appears to be identical. Moreover the transaction, as described by the parties appears to lack any economic substance. If Atlas had eight million dollars in cash to post as collateral, why would it need to borrow eight million dollars? In other words, it appears that ALC was contributing nothing of substance to this transaction. It agreed to loan Atlas eight million dollars, but only if it had eight million dollars in cash collateral. ALC was taking no risk, and was not in any real sense financing the Atlas transaction.

summary judgment "may not rest upon the allegations or denials of its pleadings; rather, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Holowaty v. McDonald's Corp., 10 F.Supp.2d 1078, 1082 (D.Minn. 1998)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 256) and Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B. ATLAS IS ENTITLED TO SUMMARY JUDGMENT**

ALC contends that Atlas entered into the loan agreement freely and voluntarily, signing the documentation giving an objective manifestation of their intent to accept the offer associated with the two transactions. When Atlas failed to provide the collateral for the loans, ALC contends the contract was breached. ALC claims $244, 500.00 in damages which represents the interest and fees ALC would have earned, had the contract been performed.

Atlas contends there was failure of consideration for the proposed loans. The parties drafted documents consistent with their oral agreement regarding the two loans and ALC's compensation for the loans was to be the fees and interest. However, as neither party in fact disbursed any money to the other, Altas contends the promissory notes are unenforceable because none of them are supported by any consideration. Additionally, Atlas argues that since the promissory notes were not supported by consideration there simply is no contract to enforce and ALC is not entitled to recover interest and fees.

The issue presented is whether the requirement that Atlas post eight million dollars cash collateral was simply a condition, that was not fulfilled, or a promise which was broken. If the requirement for collateral was a promissory condition, Atlas breached the promise and ALC is entitled to collect damages for the breach. However, if the requirement for collateral was simply a condition upon which the balance of the contract depended, the condition did not occur and while

the non-occurrence of the condition excused ALC from its obligation to perform under the contract, it does not entitle ALC to damages.

This Court concludes that the requirement that Atlas post eight million dollars in collateral is simply a condition and not a promise to perform. This interpretation of the agreement is supported by general contract principles and black letter law. "A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." See Lake Company v. Molan, 269 Minn. 490, 498-99 (1964); Restatement (Second) of Contracts § 224 (1981). Moreover, for this Court to conclude that the condition is promissory, "there must be either words or conduct by the promisor by the interpretation of which the court can discover promissory intention; a condition is a fact or an event and is not an expression of intention or an assurance." See Arthur L. Corbin, Corbin on Contracts, § 30.12 (Revised Edition 1999) ("Promise and Condition Distinguished"). Here, the only express promises in the record are the independant promises of both Atlas and ALC to repay each other eight million dollars with interest. Performance of those promises, however was clearly excused by the fact that neither party disbursed the eight million dollars to the other.[2]

The question then becomes whether there is any evidence in the record from which the Court can discover a promissory intent by Atlas to deliver eight million dollars in cash to ALC, thereby triggering ALC's obligation to disburse the reciprocal eight million dollars. If there was promissory

---

[2] Neither ALC nor Atlas is entitled to enforce the promissory notes signed by the other. It is undisputed that ALC never disbursed the loan proceeds to Atlas, because it never received the eight million dollars cash collateral from Atlas. What ALC seeks are damages it contends are measured by what it would have earned in fees and interest had the deal occurred as the parties planned. It is entitled to such damages only if it can establish that Atlas breached the unwritten promise that it would deliver the cash collateral to ALC.

intent by Atlas, the failure of the condition to post collateral not only excused ALC from its obligation under the contract but also entitles it collect damages from Atlas for breach of the promise to post the collateral.

The record is, at best, murky regarding whether there is any evidence of Atlas' promissory intent to deliver the eight million dollars to ALC. The only evidence in the record addressing whether any such promise was made is the deposition testimony of James Saxon ("Saxon"), President of ALC Financial and Michael Riley ("Riley"), the founder and President of Atlas, describing their respective understandings of the deal.

Saxon's understanding of the contract was that Atlas would wire cash collateral first and once that was received, ALC would disburse eight million dollars. (See Saxon Dep. at 39 (Exhibit E).) Saxon's "understanding" of the alleged contract was based entirely upon conversations with middlemen because he never met or talked with anyone at Atlas until after the promissory notes had been signed. (Id. at 35, 45.) It is clear from Saxon's deposition that he understood that the delivery of the collateral by Atlas, was (in the words of the restatement) "an event not certain to occur." Further, although Saxon testified that based upon Mr. Riley's connections and the representations from the Doerge firm in Chicago, he "really didn't consider that [finding the eight million dollars cash collateral] was going to be a problem," ALC can point to nothing said by Riley or anyone at Atlas from which this Court can infer a promissory intent. (Id. at 34.)

On the other hand, Riley, testified that he understood the entire transaction was conditioned upon Atlas posting collateral that was acceptable to ALC; however, when Atlas was unable to provide the collateral, both parties were excused from performing under the terms of the promissory notes. (See Riley Depo. at 29-61 (Exhibit B).

This Court can find no evidence in the record of words or conduct by Atlas from which to conclude a promissory intent to deliver eight million dollars to ALC. Therefore, ALC has failed to show that Atlas breached any promise, and is not entitled to any damages Consequently, Atlas' Motion for Summary Judgment must be granted.

## III. ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment [Docket #22] is **DENIED**; and

2. Defendant's Motion for Summary Judgment [Docket #26] is **GRANTED**.

DATED: January 18, 2002

FRANKIN L. NOEL
Chief Magistrate Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.